Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| PAUL SAPAN,<br><br>        Plaintiff,<br>   vs.<br><br>ONEROOF ENERGY, INC., a Delaware Corporation ,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br>**Trespass to Chattel**<br>**Unfair Business Practices** |

COMES NOW Plaintiff PAUL SAPAN (hereinafter referred to as "Plaintiff") who alleges as follows:

/ / /

/ / /

- 1 -
Complaint

# JURISDICTIONAL ALLEGATIONS

1. Plaintiff is, and at all times herein mentioned was, a resident of Los Angeles, but has recently moved to the County of Orange, State of California.

2. Defendant OneRoof Energy, Inc. ("OneRoof Energy") is, and at all times herein mentioned was, a Delaware Corporation, doing business in the County of Los Angeles, State of California.

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

///

///

///

## FACTUAL SUMMARY

5. Defendants made four (4) uninvited live calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch solar energy systems on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- December 11, 2013 at 4:18 pm CID 213-283-7914
- December 11, 2013 at 4: 34pm CID 213-283-7914
- December 17, 2013 at 3:39 pm CID 819-819-8197
- March 3, 2014 at 1:49 pm CID "unavailable"

6. Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from August 9, 2008 to the present.

7. While all but one of the calls complained of above used the Caller ID number, none transmitted true Caller ID name information as required by law. Only one call transmitted any CID name and it was false. 47 C.F.R. § 64.1601(e).

## The Initial Call

8. On December 11, 2013 at 4:18 pm, Defendant called Mr. Sapan's home telephone transmitting a CID number of 213-283-7914 but no CID name.

9. Mr. Sapan answered and a live person who claimed he was "Mike" with "Mortgage Relief Group" asked if Mr. Sapan spent more than $150 per month on electric bills and if his roof had an unobstructed view of the sun.

10. Curious what this was about, Mr. Sapan answered yes.

- 3 -
Complaint

11. Mike then began trying to sell Mr. Sapan on buying a solar panel system and trying to schedule a call with a "verifier" to discuss a particular type of solar system would work best.

12. Mr. Sapan, familiar with these sorts of junk calls, knew that the first caller is often a call center worker using a false generic-sounding company name to make contact before transferring the victim to the actual company whose products and services are being sold by the call center.

13. Mr. Sapan strongly suspected that this call would follow this typical format, so he consented to receive one and only one callback from the "verifier" about this solar program in order to figure out who was really calling.

**The Single Call Made With Consent (Non-Actionable)**

14. Defendant's "verifier" called Mr. Sapan a few minutes later on December 11, 2013 at 4:26 pm, saying he was "Tony" with "Sun Power Media" calling about the solar system Mr. Sapan had been pitched and immediately brought "Vince" from "Solar Solutions" on the line who pressed Mr. Sapan to schedule a home visit appointment with OneRoof Energy, Inc.

15. Now that Mr. Sapan had the name of the company whose services were being sold and who ordered these call centers to do their telemarketing, he had no further need to talk to them.

16. Mr. Sapan expressly told them not to call him anymore and hung up.

17. Mr. Sapan does not allege this one and only one call as a TCPA violation and it is not counted in nor detailed in the summary of uninvited calls above because he consented to receive this call in order to figure out who was causing these calls to be made.

18. Mr. Sapan unequivocally revoked any consent at the end of this one call and all calls made after this were made without his consent.

## The Remaining Three Actionable Calls

19. After being expressly told not to call him anymore, Defendant called again eight minutes later on December 11, 2013 at 4:34 pm using the same 213-283-7914 CID number and lack of CID name as in the first call.

20. Mr. Sapan was busy and did not answer the call.

21. Since this call used the same exact CID number and blank CID name configuration as the first call, Plaintiff pleads on information and belief Defendant, through the same agent as the first call, made this call to try to sell Defendant's solar panel systems.

22. On December 17, 2016 at 3:39 pm, Defendant called Mr. Sapan's home telephone transmitting the obviously faked three digit repeating CID number of 819-819-8197 and no CID name.

23. Mr. Sapan answered and a live person who claimed he was "James" with "Home Energy" read the exact same script as the first call asking in the exact

same words if Mr. Sapan spent more than $150 per month on electric bills and if his roof had an unobstructed view of the sun.

24. Since Mr. Sapan knew that these first contact callers almost always used false business names, he knew this call was from Defendants since it followed literally the exact same script with only the fake company name being changed.

25. Since Mr. Sapan knew Defendants were behind this call he hung up.

26. On March 3, 2016 at 1:49 pm, Defendant called Mr. Sapan's home telephone transmitting no CID number whatsoever and the obviously illegally manipulated CID name "unavailable".

27. Mr. Sapan answered and a live person who claimed he was "Rick" with "Solar Solutions" said he was calling to follow up on the solar system sales call made on December 11, 2013 at 4:26 pm.

28. While Mr. Sapan consented to that one and only one previous call he told them never to call again during that call, so the March 3rd call was an uninvited sales call whether they characterized it as a follow up or not.

## Liability of OneRoof Energy

29. During the first call and the one callback Mr. Sapan consented to, the callers had used the names "Mortgage Relief Group". "Sun Power Media" and "OneRoof Energy".

30. As mentioned above, Mr. Sapan is familiar with the format of junk telemarketing calls and knows that the person initiating the cold call often uses a false and generic sounding business name before bringing in representatives who actually identify the real company making the call or on whose behalf the sales calls are being made.

31. Shortly after these initial calls, however, Mr. Sapan searched all three names on Google just in case there was any deviation from the typical junk call format and one of the initial names was not fabricated.

32. Mr. Sapan searched "Mortgage Relief Group" and came up with a host of loan modification and mortgage services companies but did not find any company using that name selling solar energy systems. Mr. Sapan also searched adding the word "solar" to the search and also came up with no such company listed online anywhere.

33. Nor is there any such company lawfully registered with the California Secretary of State.

34. Mr. Sapan searched "Sun Power Media" and while there is a host of solar energy system companies using the words Sun Power in their name that have a "media" page or "media kit" on their website, there is no listing for any company named "Sun Power Media".

35. Nor is there any such company lawfully registered with the California Secretary of State.

36. Mr. Sapan searched OneRoof Energy, and just as he suspected, he immediately came up with the website of a real company and links to various reviews and articles about that company.

37. OneRoof Energy is registered as a real corporate entity with the California Secretary of State.

38. To the extent that the calls may have used a telemarketing agent to set up the sale of OneRoof Energy's solar systems, Plaintiff alleges on information and belief that this agent was employed by OneRoof Energy since the initial representative would refer to the OneRoof Energy representative as an "advisor" or "verifier" to give the impression they were all part of the same organization or joint enterprise.

39. OneRoof Energy's website has at the top of its page a major tab for "Process" which, if clicked, explains that "Step 1" is a professional consultation at your home, of the exact type the people calling me were trying to set up.

40. And Steps 2 and 3 on the website are design/installation and activation, so OneRoof Energy sells only full energy systems with consultation and installation services provided directly by them.

41. Since OneRoof Energy does not sell standalone consumer products

which could be sold by completely independent retailers, but only systems custom designed and built by OneRoofEnergy, Plaintiff alleges on information and belief that if any third parties were used by OneRoof Energy to make the calls complained of herein those third parties were hired and acted under the authority of OneRoof Energy.

42. Since the persons calling explicitly said they were selling solar energy systems by setting up professional consultations with OneRoof Energy, Plaintiff alleges on information and belief that if any third parties were used by OneRoof Energy to make the calls complained of herein the callers conduct would give any reasonable person the impression they were authorized to solicit on behalf of OneRoof Energy.

43. There are a number of complaints online about OneRoof Energy's telemarketing, including a complaint to the Better Business Bureau dated October 18, 2013 where the complainant takes issue with receiving a telemarketing call "calling themselves a broker for a federal program" and acting as if they were affiliated with the local power company before the complainant learned that they were just making normal junk telemarketing sales calls on behalf of OneRoof Energy. (*See*, http://www.bbb.org/sdoc/business-reviews/solar-energy-equipment-and-systems-dealers/oneroof-energy-inc-in-san-diego-ca-172002863/complaints/).

44. There are also more recent complaints about junk telemarketing calls involving OneRoof Energy in 2015. (See, http://800notes.com/Phone.aspx/1-951-331-7217).

45. Since OneRoof Energy either employed representatives directly or used agents who had made illegal calls both before the calls to Mr. Sapan and after, Plaintiff alleges on information and belief that if any third parties were used by OneRoof Energy to make the calls complained of herein their conduct was ratified by OneRoof Energy by continuing to use the same or similar agents both before and after the calls to Mr. Sapan.

## Actual Harm & Willful and Knowing Conduct

46. Mr. Sapan is angered and annoyed by these junk calls and has been harmed by the waste of his time during the calls themselves, the waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and intrusion on his privacy of having to listen to the insistent metallic jangling of a phone ringing in his home whether he answered a particular call or not.

47. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 2% of his monthly phone bill in

December 2013 since Defendant's calls constituted 2% or more of the total calls to his phone during the height of their junk calling campaign.

48. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

49. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## FIRST CAUSE OF ACTION
[TCPA Violation – Do Not Call List – For All 4 Calls]

50. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

51. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

52. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

53. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

54. Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

55. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

/ / /

/ / /

/ / /

Complaint

## SECOND CAUSE OF ACTION
[Trespass to Chattel – For All 4 Calls]

56. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

57. The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

58. At no time did Plaintiff consent to this trespass.

59. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 2% of his monthly phone bills in December of 2013 since Defendant's calls constituted 2% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

60. In making the illegal calls described above, defendant was guilty of oppression and malice, in that defendant made said calls with the intent to vex, injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

## THIRD CAUSE OF ACTION
[Engaging in Unfair Business Practices – For All 4 Calls]

61. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

62. Because these telephone calls violate federal statutes, they are unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

63. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 2% of his monthly phone bills in December of 2013 since Defendant's calls constituted 2% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

64. Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:
1. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);
2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:
3. For compensatory damages according to proof;
4. For punitive damages;

/ / /

/ / /

On the THIRD CAUSE OF ACTION:

    5. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

    6. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

    7. For costs of suit herein incurred; and

    8. For such further relief as the Court deems proper.

DATED: August 4, 2016                  **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
PAUL SAPAN